# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## Civil Action No:

JASON WEI LOCASALE,

    Plaintiff,

v.

DUKE UNIVERSITY and
DONALD PATRICK MCDONNELL, in
his individual and official capacity

    Defendants.

**COMPLAINT**

Now comes Plaintiff complaining about Defendants and alleges as follows:

## THE PARTIES:

1. Plaintiff, Dr. Jason Wei Locasale, is a citizen and resident of Durham County, North Carolina.
2. Plaintiff is a Bi-Racial Asian male of medium dark complexion, with Asian features.
3. Plaintiff is employed as an Associate Professor with Tenure in the Department of Pharmacology and Cancer Biology at the Duke University School of Medicine.
4. Plaintiff received a Bachelor's Degree at Rutgers University in Chemistry and Physics and a PhD at the Massachusetts Institute of Technology. Plaintiff completed a Postdoctoral Fellowship at Harvard Medical School.
5. Plaintiff is an internationally recognized scholar as one of the world's leading experts in the field of metabolism.
6. Plaintiff is an internationally recognized biomedical scientist in the field of cancer metabolism and his discoveries have brought hope to people afflicted by cancer.
7. Plaintiff has brought widespread recognition to Defendant Duke resulting from scholarly publications, public outreach, speaking engagements and in multi-million dollars of research grant awards to Defendants.
8. On or about November 22, 2019, Defendant Duke highlighted Plaintiff on the Duke Medical School website as a faculty member recognized on the "Highly Cited Researchers" list.
9. From on or around September 2018 to this date time, Plaintiff has authored five papers including

two as senior author in the three prestigious scientific journals: *Cell*, *Nature* and *Science* which provide an objective metric that he is one of the highest performing research scholars in Defendant's School of Medicine. These and other publications from the Plaintiff have brought the Defendant Duke recognition and improved its reputation as a Research University.

10. Plaintiff was recognized in November 2019 by Web of Science as being on the Global list of highly cited academics for multidisciplinary research. This honor was given to approximately 16 faculty out of over 2100 faculty in Defendant's School of Medicine.

11. Plaintiff is a highly accomplished mentor and teacher and he has received mentoring awards and his trainees have received awards from Defendant Duke and outside institutions. This recognition includes a nomination for the Outstanding Postdoc Mentor at Duke University Award given by Defendant Duke on or about September 24, 2018. This recognition also includes a nomination for a Gordan G. Hammes Faculty Teaching Award by students to the Defendant Duke's School of Medicine in the calendar year of 2017. The awards include a Celebrating Mentors Recognition from the Duke Annual Fund and Defendant Duke's President Vincent Price given to Plaintiff by Defendant Duke on or about March 25, 2019. These awards recognize the positive performance in Plaintiff's teaching of undergraduate students, graduate students and postdoctoral research fellows.

12. Plaintiff has consistently received positive performance reviews from Defendants. These include his most recent reviews given to him on or around December 2018 and July 2019.

13. As an essential component to his professorship and employment, Plaintiff has operated a research laboratory at Defendant's School of Medicine ("SoM"), working with staff, undergraduate, and postgraduate students who are candidates for Master's, Medical Doctor, and Doctor of Philosophy degrees. The laboratory is a platform and classroom for teaching. The laboratory is also a conduit to perform scientific inquiry and discovery. The laboratory is a platform for scientific idea generation, scientific experimentation, data analysis and knowledge synthesis (scientific fact finding), and knowledge dissemination. The laboratory functions in collaboration with other laboratories at Defendant's workplace and with outside entities. In Plaintiff's profession, the laboratory is required for professional development.

14. Plaintiff has managed a funded laboratory bringing in millions of dollars to Defendants.

15. Duke University ("Defendant Duke") is a non-profit corporation existing under the laws of North Carolina, operating Duke University School of Medicine in Durham, NC and doing business in

Durham County, North Carolina. At all times relevant to this Complaint, Duke did business in the State of North Carolina and was the employer of Plaintiff within the meaning of the common law of the State of North Carolina and in accord with the definition of "employer" under the EEOC and ADA. It employs more than 500 employees.

16. The following person, among other Duke employees, acted as an individual and within the course of scope of his employment, as a representative and/or agent with regard to the matters set forth in the Complaint:

    - Defendant Dr. Donald P. McDonnell ("Defendant McDonnell"), as Chairman of the Department of Pharmacology and Cancer Biology and Plaintiff's supervisor at all relevant times.

17. At all relevant times, Defendant McDonnell was Plaintiff's direct supervisor and an employee of Defendant Duke.

## STATEMENT OF FACTS

18. Plaintiff was raised by a single mother of Chinese National Origin who had recently immigrated to the United States with limited money and education.

19. During his childhood Plaintiff learned Asian traditions and, as an Asian tradition, Plaintiff attended his mother's workplace settings and became accustomed to traditions associated with the ethnic minority groups that inhabited those settings.

20. As a result of his upbringing, Plaintiff was raised to question discriminatory practices.

21. Plaintiff has been subjected to discrimination on the basis of color and race/national origin ("ethnic discrimination") by Defendants.

22. Plaintiff has objected to discrimination on the basis of color and race/national origin ("ethnic discrimination") by Defendants.

23. Plaintiff has objected to discrimination of others on the basis of color and race/national origin ("ethnic discrimination"), and failure to make handicapped accommodations ("disability discrimination") by Defendants.

24. In or about the calendar year 2015, Plaintiff was recruited to Defendant Duke by Dr. Jeffrey Rathmell, former Associate Professor at Duke University and others.

25. Plaintiff, during his recruitment and at the time of his eventual agreement to work at Defendant Duke in 2015, had been prior to, employed at Cornell University. At or around the time of his employment agreement with Defendant Duke, he also had an offer from the University of Texas

- MD Anderson.

26. As a part of the recruitment process, Plaintiff was given a proposed offer letter that incorporated, by an included link, the policies stated in the Duke Faculty Handbook and the policies of the School of Medicine.

27. The Duke Faculty Handbook ("DFH"), the terms of which were expressly incorporated into Plaintiff's contract with Duke, entitled him to certain rights as to his employment relationship with Duke. These rights included those stated in Appendix C of the DFH, which in relevant part defines itself as "embodies an agreement between the president and the faculty as to policies and procedures with respect to academic freedom, academic tenure, and certain matters of due process." The relevant promises made by Duke and applicable to Plaintiff include, *inter alia*: The promise that Duke faculty have academic freedom "[t]o act and to speak in his or her capacity as a citizen without institutional censorship or discipline" , to be able to conduct research "[t]o carry on research and publish the results subject to the adequate performance of his or her other academic duties." and to "[t]o teach and to discuss in his or her classes any aspect of a topic pertinent to the understanding of the subject matter of the course being taught.

28. After his arrival at Defendant Duke, Plaintiff was censured and/or disciplined for speaking on several occasions. This included voicing concern over Defendant Duke not accommodating a handicapped minority student as early as August 2018 and as late as June 2019.

29. Defendant Duke included the Handbook as part of its recruitment process in order for Plaintiff to be able to rely upon its provisions.

30. Defendant Duke included the policies of the SoM as part of its recruitment process in order for Plaintiff to be able to rely upon those policies.

31. Defendant Duke promulgated the Duke Faculty Handbook with knowledge that Duke faculty would take Duke at its word and would rely upon Duke's representations that those benefits would be provided to Duke faculty as stated therein.

32. At the time Defendant Duke promulgated the Duke Faculty Handbook, it was reasonably foreseeable to Duke that Duke faculty would take Duke at its word and would rely upon Duke's representations that those benefits would be provided to Duke faculty as stated therein.

33. Defendant Duke promulgated the Duke Faculty Handbook with the intention that Duke would be bound by the promises it made to its faculty therein, including the intention to be bound by

its commitment to provide academic freedom to Duke faculty and to due process.

34. On or around the start of Plaintiff's employment, Dr. Rathmell departed Defendant Duke.

35. Plaintiff's recruitment was a partnership hire between the Duke Cancer Institute ('DCI"), the Duke Molecular Physiology Institute ("DMPI'), and the Department of Pharmacology and Cancer Biology. Plaintiff was hired by Defendant Duke to lead an initiative in Cancer Metabolism.

36. Upon information and belief, the appropriate report by Plaintiff would have been to the Dean of the SoM (Dean Nancy Andrews) as the supervisor to multiple Duke units. Rather, Plaintiff was subjected to unilateral reporting to a lesser ranked Chairman, Defendant McDonnell.

37. Plaintiff, as part of his partnership hire and recruitment to Duke University, was not aware that he would be subjected to unilateral reporting to Defendant McDonnell and his promoted climate encouraging and/or requiring engagement of activities of a non-diverse culture.

38. On or about September 2018, Dr. Duckett, the Vice Dean for Basic Science and Defendant McDonnell's supervisor had encountered Plaintiff on campus, shortly after Dr. Duckett's arrival at Duke University. After Plaintiff introduced himself, Dr. Duckett admitted that in his role in the Dean's Office he would work to not override the actions of the Department Chairs.

39. On or about April 23, 2019, Defendants would not affirm to provide customary scholarship funds to support a newly entering ethnic minority student into Plaintiff's laboratory.

40. On or about the month of August 2018, Plaintiff objected to discriminatory practices by Defendant Duke including reporting concerns to a number of institutional channels including Vice Dean Raphael Valdivia and President Vincent Price.

41. The history of Defendant McDonnell in treating Plaintiff negatively, because of his Asian culture, is illustrated by his insistence on having small talk and requiring direct eye contact during conversations, after he has been told that this is not within Asian culture.

42. On or about July 19, 2019, Plaintiff was informed by Defendant McDonnell that Dr. Mary Klotman, Dean of the School of Medicine, ordered that he would be subject to a "cultural" audit.

43. The unprecedented "cultural" audit of Plaintiff's laboratory was undefined so that Defendants could harass, intimidate and bully Plaintiff. An auditor, not expert in laboratory protocol,

scientific research and professional responsibilities of a Professor, was brought in to interview Plaintiff's students, staff and administrators about alleged but undefined lack of professionalism and compliance with Defendants' culture.

44. On or about July 12, 2019, Plaintiff was subject to denial of scholarship funds for a student to study with Plaintiff.

45. On or about July 19, 2019, Plaintiff was subject to a hiring freeze on his lab and non- provision of customary scholarship funds for a minority student who desired to study and conduct research with Plaintiff.

46. Plaintiff was prevented from taking on new students, and making new hiring offers to postdoctoral fellows, research associates, technicians and other employees necessary for his laboratory to operate with proficiency.

47. On or about the month of August 2018, Plaintiff objected to discriminatory practices by Defendant Duke including reporting concerns to a number of institutional channels including Vice Dean Raphael Valdivia and President Vincent Price.

48. On or about August 7, 2019, Plaintiff formally objected to these discriminatory practices by reporting concerns to the Office of Institutional Equity (OIE), an internal Duke University grievance channel. OIE informed Plaintiff that Plaintiff should report the matter to Human Resources. Ironically, Human Resources in Plaintiff's assigned department reports to Defendant McDonnell.

49. On or about August 28, 2019, despite Plaintiff already having been subjected to routine and regular monitoring by several regulatory oversight entities, Plaintiff was also subject to a billing and compliance audit by Defendants that was ordered by Dr. Colin Duckett.

50. The targeted and undefined audit was conducted while Plaintiff was undergoing the "cultural" audit. Defendants refused to delay the audit until the "cultural" audit was completed.

51. The "cultural" audit showed no improper actions by Plaintiff or any misconduct by him or within his research laboratory.

52. The billing and compliance audit showed no improper actions by Plaintiff or any misconduct in his research laboratory.

53. Additionally, on or about September 6, 2019, Plaintiff's staff member was accused by the Department of Pharmacology and Cancer Biology Business Manager, Ms. Sharon

Dowell-Newton of administering false documents for billing.

54. Plaintiff and his staff member were able to refute the allegation on sight and have Defendants retract its accusation of falsified documents, because there was no impropriety.

55. On or about September 6, 2019, in an email sent to Plaintiff by Mr. Scott Gibson, Executive Vice Dean For Administration in the Defendant's School of Medicine, with Defendant McDonnell and Dr. Duckett copied, Plaintiff was threatened with undefined consequences if he did not volunteer a withdrawal letter for a research project grant application to the National Institutes of Health in the Department of Health and Human Services ("NIH").

56. This research grant application at issue was required in order for Plaintiff to receive continuous NIH funding. Continuous NIH funding is needed for the sustainment of his research program and advancement of his career trajectory. Continuous funding would also lead to his eligibility and success of obtainment of a larger, longer term award (R35 Outstanding Investigator Award) from the NIH. This trajectory would sustain and grow his research program, further developing his career in biomedical science for the next 8 to 10 years.

57. On or about September 11, 2019, Defendants unilaterally withdrew the NIH grant application for the project submitted by Plaintiff.

58. On October 8, 2019 Plaintiff requested a meeting with Defendant McDonnell to extend an olive branch. At that meeting, Defendant McDonnell chastised Plaintiff for, among other things related to body language, not making eye contact even though he was aware that it was Plaintiff's Asian culture not to make eye contact.

59. On or about Friday October 18, 2019 at around 3:00 p.m., Defendants gave Plaintiff a written letter, ordering Plaintiff to be subjected to an undefined fitness for duty evaluation with Defendants' selected, identified and affiliated medical doctor. Plaintiff was unjustifiably told to remove himself from the campus, not have access to his lab, office, students, staff, classrooms and the Duke campus without first being seen by Defendants' identified doctors and being subjected to a fitness for duty evaluation. Defendants prohibited Plaintiff from having meetings and conversations with his students and staff and other Duke staff. Defendants prohibited Plaintiff from attending professional meetings. Defendants prohibited Plaintiff from communicating with students, postdocs, and staff until he was returned from his undefined leave. Defendants prohibited Plaintiff from traveling to conferences and other universities to discuss his scholarly work. Defendants prohibited Plaintiff from using research funds to

conduct research. Defendants prohibited Plaintiff from contacting staff at Duke. Defendants prohibited Plaintiff from discussing research with other Duke faculty and to others who do not work at Duke.

60. Defendant McDonnell sent an email to Plaintiff on or about October 24, 2019 stating that "you are not allowed represent yourself as a Duke faculty member in any capacity (i.e. interactions with collaborators, staff, trainees, or attendance at scientific meetings)."

61. Unbeknownst to Plaintiff at that time, a letter dated October 10, 2019 had been drafted and signed by Defendant McDonnell, stating a requirement for an evaluation by two Duke affiliated named evaluators: one was a non-medical doctor and the second was not identified by specialty.

62. After Plaintiff insisted, on October 24, 2019 he was given the ability to make a choice of the provider for the required fitness for duty examination.

63. On or about October 29, 2019 and during subsequent meetings, Defendant McDonnell made disparaging statements about Plaintiff in the presence of at least ten students and staff who study and work with Plaintiff.

64. As an intimidation and retaliatory tactic, on or about November 4, 2019 at 4:59 p.m. Defendant McDonnell sent Plaintiff an email stating that he had until November 8, 2019 to identify an evaluator.

65. Plaintiff met the above November 8th deadline and scheduled an appointment for November 13, 2019 with a physician (a doctor who had experience conducting fitness for duty examinations) to conduct the examination.

66. On or about November 7, 2019, Defendants through Dr. Carol Epling, Director of Defendant's Employee Occupational Health and Wellness unit, was contacted by Plaintiff's identified, qualified medical doctor to obtain the protocol to conduct the fitness for duty evaluation required by Defendants in order for Plaintiff to return to his professional responsibilities.

67. On or about November 13, 2019, and only following questioning by Plaintiff about their response delay to the provided doctor, Defendant Duke rejected the doctor submitted by Plaintiff to conduct the fitness for duty evaluation.

68. On or about November 15, 2019 at 5:20 p.m., Defendant McDonnell sent Plaintiff another bullying email telling him that he had until November 20, 2019 at noon to identify another fitness for duty evaluator.

69. Plaintiff met the November 20th deadline for identifying a new evaluator and the name was provided to both Dr. Epling and the Defendants' attorney.
70. After silence for nearly two weeks, Defendants sent a letter on December 3, 2019 potentially agreeing to allow Plaintiff to submit to an evaluation from the evaluator.
71. On or about December 3, 2019, Plaintiff scheduled an examination for December 11, 2019 with the physician.
72. On information and belief, On December 6, 2019, the independent physician contacted Dr. Epling for instructions and collaterals and provided Dr. Epling with the documentation requested by her in a letter dated December 3, 2019.
73. On or about December 11, 2019, Plaintiff was ready to take the examination, but learned that the scheduled examination had to be rescheduled because Defendants had not provided their documentation to the physician.
74. Indeed, on December 11, 2019, Plaintiff contacted Dr. Epling and learned she had not made her contact with the physician.
75. On or about December 13, 2019, Defendant McDonnell sent Plaintiff another bullying email telling him that he had until December 31, 2019 to undergo the fitness for duty evaluation or else he would be placed on unpaid leave. This was done even though Plaintiff's prior appointment had been cancelled because of Defendant Duke's failure to act and the new deadline set by Defendant McDonnell was during the holiday season when the evaluator had pre-scheduled travel plans.
76. On or about January 3, 2020, Plaintiff took the Fitness for Duty examination.
77. Upon information and belief, on or about January 23, 2020, the provider sent the results of the examination to Defendant Duke.
78. On or about January 18, 2020 Defendants harassed and intimidated Plaintiff by notifying at least one of his research funding sources that he was on leave from Duke University.
79. On or about January 21, 2020, Plaintiff's postdoctoral fellow was falsely accused by Defendant McDonnell of mismanaging research data.
80. On or about February 4, 2020, Defendants informed Plaintiff he was declared fit for duty.
81. On February 6, 2020, only after Plaintiff inquired, Plaintiff was given a meeting date of March 16, 2020 to discuss a return to work.
82. Upon Plaintiff's request to move up the meeting, the meeting was re-scheduled to February

18, 2020.

83. At that meeting, on February 18, 2020, Defendant Duke, among other actions, rejected Plaintiff's request for cultural training for Duke administrators and required that he submit to supervision by Defendant McDonnell.

84. On or about February 24, 2020, Plaintiff was handed a contract pre-signed by Defendant McDonnell containing false negative statements about Plaintiff, and Plaintiff was urged to sign it on the spot.

85. Plaintiff was told that if he did not sign the agreement by March 5, 2020, among other things, he would be placed on unpaid leave status and his grant projects would be terminated. This was directed to him even though he would not have had the meeting until March 16th and would have continued on paid leave status until that date if he had not made a request to move the meeting up.

86. On February 24, 2020, Plaintiff requested that Defendant Duke provide him with an electronic copy of the letter in order for him to make suggested edits.

87. On February 28, 2020, Plaintiff was given an electronic copy.

88. On March 4, 2020, Plaintiff offered his edited agreement and offered to negotiate the agreement.

89. On March 5, 2020, Dr. Colin Duckett stated that the agreement was not negotiable.

90. On March 6, 2020, Plaintiff was placed on unpaid leave status.

91. Upon information and belief, on or about March 12, 2020, Defendant McDonnell met with at least six of Plaintiff's students and staff and made negative statements about Plaintiff.

92. On March 13, 2020, President of Duke, Dr. Vincent Price issued a statement that all Duke faculty and staff will continue to stay in a paid work status during the Coronavirus matter.

93. On March 13, 2020, Plaintiff filed an appeal in of his termination, in accordance with Defendant Duke's grievance process, with the Chair of the Duke University Faculty Hearing Committee ("FHC") in accordance with the provisions of the Duke Faculty Handbook, including Appendix C and Appendix N.

94. On March 14, 2020, the Chair of the Faculty Hearing Committee, Professor Samuel Buell, notified Plaintiff that Defendant McDonnell was entitled to 30 days to respond to Plaintiff's appeal, but that the Committee sua sponte extended the time to respond to sixty (60) days, making the deadline May 13, 2020 and obligating the respondent, Defendant McDonnell, to

copy Plaintiff with his response.

95. After a call from Plaintiff's attorney to Duke's attorney, Kate Hendricks, on March 18, 2020, Plaintiff was informed that his salary would resume until March 31, 2020 or until Duke eases restrictions regarding the Coronavirus. Plaintiff was still subjected to all other restrictions.

96. Plaintiff has never received total compensation for the unpaid leave time that started on March 6, 2020.

97. On March 31, 2020, Plaintiff was informed in writing that his research grants would be terminated and he received a threat of subjection to termination if he did not sign the agreement by April 7, 2020.

98. On or about April 7, 2020, Plaintiff signed an agreement to avoid elimination of his research program, likely termination of his staff (including several on Duke-sponsored visas), displacement of his students, and termination.

99. On or about May 1, 2020, Plaintiff was informed that at least one research grant had been terminated.

100. On the morning of May 14, 2020, Plaintiff wrote to the Duke School of Medicine's Ombudsperson to see if Defendant McDonnell filed a response to his Complaint by the May 13, 2020 due date.

101. On the afternoon of May 14, 2020, Mr. Buell notified Plaintiff that he received a response from Defendant McDonnell ("the Response").

102. The Response was over twenty-one pages and had included severe unfounded, pre-EEOC complaint accusations about Plaintiff's character and conduct.

103. The Response stated that Defendant McDonnell was going to open investigations into an unfounded June 2019 allegation and an unsubstantiated August 2019 allegation involving Plaintiff. Defendants knew about those matters and they did not believe they warranted any action at the alleged time of these matters.

104. June and August 2019 are dates prior to Plaintiff having filed EEOC complaints, but Defendant McDonnell stated and used these old unsubstantiated allegations in order to retaliate against and harass Plaintiff through investigations of pre-EEOC

unsubstantiated allegations.

105. On or about May 14, 2020, Defendant McDonnell placed a negative letter in Plaintiff's file with false accusations in an effort to retaliate against and harass Plaintiff. Futhermore, the FHC Chair, Mr. Buell, determined he heard no issue to decide and closed the complaint.

106. On or about May 14, 2020, after Plaintiff's EEOC filings, Defendant McDonnell in his capacity as an agent, employee and representative of Defendant Duke, disseminated the negative letter with false allegations to Defendant Duke Employees.

107. The factual pattern above is continuing in nature and Plaintiff has information that he may be subjected to continuing discrimination and/or retaliation as a result of his complaints and this lawsuit.

108. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant Duke within the meaning of the common law and within the definition of the Equal Opportunity Employment Commission (EEOC), 42 U.S.C. § 2000 et. seq. and the ADA, 42 U.S.C. § 12112, et seq.

109. Included in the benefits set out in the Duke Faculty Handbook, Defendant Duke promised its faculty that it would provide and protect certain rights with respect to faculty employment with Defendant Duke.

110. After Plaintiff was hired, Defendant McDonnell ignored Plaintiff's job expectations. Among other matters, he was not admitted to committees that would be required for the Cancer Metabolism initiative.

111. Following Plaintiff's initial contract with Defendant Duke, and at the time of his promotion to a tenured Associate Professor, Defendant Duke continued the same promulgation of its Duke Faculty Handbook in order to represent the various benefits and obligations existing between Defendant Duke and its faculty in their employment relationship.

112. Prior to October 18, 2019, Plaintiff had received interest in lateral or upward employment opportunity from other potential employers in or about calendar years 2018 and 2019.

113. Upon information and belief, as punishment through a diminution of his career development, Defendants sent career sabotaging notifications of Plaintiff's placement on

leave status to the American Cancer Society (ACS), to the National Institutes of Health (NIH) and other research institutions.

114. Defendant Duke discriminated against Plaintiff by suspending his employment on October 18, 2019 stating the basis as Plaintiff's perceived disability.

115. At the time of Plaintiff's relief of duty as a tenured Associate Professor at Duke, he was performing his job at a level that met or exceeded his employer's legitimate expectations.

116. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his employment status as an employee resulting from discrimination, protected activities and because of a falsely perceived disability.

117. Duke had no legitimate non-discriminatory reason for its adverse employment action against Plaintiff.

118. Upon information and belief, the acts as alleged herein were committed against Plaintiff with malice or reckless indifference to Plaintiff's protected rights.

119. The following persons acted as the employees, representatives and/or agents of Defendant Duke and within the course of scope of their employment with regard to the matters set forth in the Complaint:

- Defendant McDonnell (white male), Chairman of the Department of Pharmacology and Cancer Biology

- Dr. Mary Klotman (white female), Dean of the School of Medicine

- Dr. Colin Duckett (white male), Vice Dean for Basic Science of the School of Medicine

- Mr. Scott Gibson (white male), Executive Vice Dean for Administration of the School of Medicine

- Dr. Ann Brown (white female), Vice Dean for Faculty of the School of Medicine

- Dr. Carol Epling (white female), Director of Employee Occupational Health and Wellness

- Ms. Sharon Dowell-Newton (white female), Business Manager of the Department of Pharmacology and Cancer Biology

- Dr. Christopher Newgard (white male), Professor Department of Pharmacology and

Cancer Biology, Director Duke Molecular Physiology Institute

- Dr. Raphael Valdivia (white male), Former Vice Dean for Basic Science of the School of Medicine

- Moria Montalbano (white female), Associate Dean, Space Management & Research Resources

- Dr. Jeffrey Rathmell (white male), Associate Professor Department of Pharmacology

120. Plaintiff voiced concern to Dr. Ann Brown, Dr. Colin Duckett, and Defendant McDonnell on October 18, 2019 that perceptions about a disability were due to racial animus.

121. Defendants regarded Plaintiff as having a mental handicap. Defendants required a psychiatric assessment as a necessary condition of employment at Duke. Due to this perceived disability, Defendants discriminated against him in violation of the Americans with Disabilities Act (ADA).

122. Plaintiff filed a timely charge with the EEOC alleging violations of the ADA and the Americans with Disabilities Act Amendments Act (ADAAA) by Duke. On or about February 21, 2020, the EEOC issued its Notice of Right To Sue (NRTS) entitling Plaintiff to bring suit on his claims under the ADA and ADAAA. All conditions precedent to this lawsuit have been fulfilled.

123. At all times relevant herein, Plaintiff was perceived by Defendants to be disabled, within the ADAAA in that: (1) Plaintiff was perceived to have a physical or mental impairment that substantially limited one or more major life activities; (2) Plaintiff was regarded as having such an impairment.

## JURISDICTION AND VENUE

124. The venue of this Court over this controversy is based upon the following:

a. The unlawful employment practices alleged herein were committed in the Middle District of North Carolina. Accordingly, venue lies in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b);

b. The unlawful actions, were committed in the Middle District of North Carolina, and described above including discrimination and retaliation.

c. Plaintiff avers that Defendant is a non-profit corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

125. Jurisdiction of the court is invoked pursuant to 28 U.S.C § 1343(3) and (4), 28 U.S.C. § 1331 and 42 U.S.C. § 2000e, et. seq., this being a proceeding to enforce rights and remedies secured to

Plaintiff by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et. seq., as amended; by the Civil Rights Act of 1866 as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981. Jurisdiction is further invoked pursuant to 42 U.S.C. § § 2201- 2202, this being an action for declaratory relief and injunctive relief, declaring illegal the acts of Defendants complained of herein for violation of rights secured to Plaintiff by the several Civil Rights Acts, EEOC laws, State statutes and laws and preventing further and future violations of these statutes and laws.

126. All conditions precedent to jurisdiction under 42 U.S.C. § 2000e, et. seq., have occurred or been complied with, to wit:

 a. An initial charge of employment discrimination was filed with the Equal Employment Opportunity Commission within 180 days of the commission of the discriminatory employment practice.

127. A Notification of Right to Sue from the Equal Employment Opportunity Commission was dated October 28, 2019, and mailed on or about October 29, 2019, this being a proceeding also to enforce rights and remedies secured to Plaintiff by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., the ADA Amendments Act of 2008 ("ADAAA"). Plaintiff seeks declaratory and injunctive relief to ensure the rights secured by Plaintiff pursuant to the ADA and to prevent further and future violations of this statute.

128. All conditions precedent to jurisdiction under 42 U.S.C. § 12101, et. seq., have occurred or been complied with, to wit:

 a. A subsequent charge of employment discrimination and retaliation was filed with the Equal Employment Opportunity Commission within 180 days of the commission of the discriminatory employment practice;

 b. A notification of Right to Sue from the Equal Employment Opportunity Commission was secured by Plaintiff.

129. Jurisdiction is also proper through N.C.G.S. § 143-422.1 and N.C.G.S. § 1-253.

130. Venue is proper in this court pursuant to N.C.G.S. § 1-77.2 The venue of this Court over this controversy is based upon the following:

a. The unlawful employment practices alleged herein were committed in the Middle District of North Carolina. Accordingly, venue lies in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b); and,

b. Plaintiff avers that Defendant Duke is a non-profit corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

131. Plaintiff timely filed eight separate Charges of Discrimination with the EEOC, designated as EEOC Charge Nos. 433-2020-00200, 433-2020-00798, 433-2020-01044, 433-2020-00484, 433-2020-01108, 433-2020-01324, 433-2020-02113 and 433-2020-0`2959.

132. The EEOC issued a Notice of Right to Sue to Plaintiff with regard to Charges of Discrimination dated October 28, 2019 and mailed on or about October 29, 2019.

133. The EEOC issued a Notice of Right to Sue to Plaintiff with regard to Charges of violation of the ADA and ADAAA dated February 21, 2020.

134. On August 28, 2020, Plaintiff filed a new Charge of Discrimination with the EEOC. The EEOC issued a Notice of Right to Sue to Plaintiff with regard to Charges of discriminatory Retaliation dated September 11, 2020 and mailed on or about September 14, 2020 (A copy of which is attached hereto as Exhibit A.)

135. Plaintiff has exhausted all of his administrative remedies under Title VII of the 1964 Civil Rights Act.

136. Defendants have practiced discrimination and retaliation, as evidenced by the following illustrative, but not entire evidence to be presented at a trial of this matter.

**Defendant Duke's Discrimination, Harassment, Intimidation and Retaliation Against Plaintiff**

137. Retaliation against Plaintiff by Defendants has included an ongoing pattern and practice of adverse actions and retaliation as summarized below. They include, but are not limited to:

a. On or about May 14, 2020 Defendant McDonnell, in his capacity as an agent, employee and representative of Defendant Duke, stated that he was going to investigate two matters that occurred prior to Plaintiff's discrimination complaints, a June 15, 2019 matter and an August 2019 incident.

b. On or about May 14, 2020, after Plaintiff's EEOC filings, Defendant McDonnell in his capacity as an agent, employee and representative of Defendant Duke, placed a negative letter with false allegations into Plaintiff's personnel file.

c. On or about May 14, 2020, after Plaintiff's EEOC filings, Defendant McDonnell in his capacity as an agent, employee and representative of Defendant Duke, disseminated a negative letter with false allegations to Defendant Duke employees.

d. On or about May 28, 2020, after Plaintiff's discrimination complaints, Defendant McDonnell in his capacity as an agent, employee and representative of Defendant Duke, noticed Defendant Duke faculty members for disciplinary charges, including utilizing allegations regarding actions of Plaintiff based upon pre-May 12, 2020 allegations and dates prior to Plaintiff having filed discrimination allegations against Defendant McDonnell.

e. On or about July 15, 2020, after Plaintiff's discrimination complaints, Defendant McDonnell in his capacity as an agent, employee and representative of Defendant Duke, threatened one of Plaintiff's Chinese staff members with disbarment from the campus building.

f. On or about August 6, 2020, after Plaintiff's discrimination complaints, Defendant McDonnell in his capacity as an agent, employee and representative of Defendant Duke, subjected Plaintiff to a billing audit.

**Plaintiff is Subjected to Retaliation, Harassment and Intimidation**

138. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 137 above as if fully set forth herein.
139. Defendants retaliated against, harassed and intimidated Plaintiff as described in the above paragraphs.
140. Plaintiff seeks monetary damages and a declaratory judgment to correct the wrongs of Defendants' conduct.

**DAMAGES**

141. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 140 above as if fully set forth herein.
142. Defendants have discriminated and retaliated against Plaintiff on the basis of his race, color and/or national origin, because they perceived him to have a disability and because of his prior complaints of discrimination.

# CAUSES OF ACTION
# FIRST CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 AND 42 USC § 1981

143. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 142 above as if fully set forth herein.
144. Plaintiff objected to discrimination against his on the basis of his race, color and national origin.
145. Plaintiff filed eight separate Charges of Discrimination against Defendants on the basis of protected characteristics and protected activities and retaliation
146. The actions of Defendants as set forth herein constitute retaliation against Plaintiff for the assertion of his right to be free from racial, color and/or national origin discrimination. Such retaliation is in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a).
147. As a result of the unlawful actions of Defendants as set forth herein, Plaintiff has suffered the loss of wages, other compensation, benefits of employment and professional development.
148. Plaintiff is entitled to recover for economic losses in an amount greater than $25,000.
149. As a result of the unlawful actions of Defendants as set forth herein, Plaintiff has suffered compensatory damages including loss of enjoyment of life, inconvenience, mental suffering, and emotional distress.
150. Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq. (Title VII) in an amount exceeding $25,000 as a proximate result of Defendant's conduct alleged herein.
151. Defendants engaged in discrimination and retaliation against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to contract, and to be free from racial, color and national origin discrimination in the workplace, as set forth in 42 U.S.C. § 1981.
152. Defendants engaged in discrimination and retaliation against Plaintiff, denying him the right to contract and to due process and equal protection of the law with regard to race, color and national origin in violation of his civil rights stated in 42 U.S.C § 1981.
153. Plaintiff is entitled to punitive damages as provided by 42 U.S.C. § 1981 in an amount exceeding $25,000 as a proximate result of Defendants' conduct as alleged herein.
154. Plaintiff is entitled to his costs and reasonable attorney's fees incurred for asserting his rights under federal law as set forth in 42 U.S.C. § 2000e-5(k).

## SECOND CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION IN VIOLATION
## OF THE ADA & ADAAA

155. Plaintiff hereby realleges and incorporates by reference the statements and allegations contained in Paragraphs 1 through 154 above as if fully set forth herein.

156. 42 U.S.C. § 12112(a) provides that is an unlawful employment practice for an employer to, "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . other terms, conditions, and privileges of employment."

157. At all times relevant herein, Plaintiff was perceived to be disabled, within the ADAAA in that regarding a perceived mental and/or substance abuse impairment: (1) Plaintiff was perceived to have had a physical or mental impairment that substantially limited one or more major life activities; (2) Plaintiff was regarded by Defendants as having such impairments.

158. Plaintiff was subjected to discrimination, harassment and retaliation based upon a perceived disability.

159. The complained of discrimination, harassment and retaliation was sufficiently pervasive or severe so as to alter the terms, conditions, and privileges of his employment.

160. The foregoing discrimination, harassment and retaliation is attributable to and was caused by the acts of Defendants.

161. Defendants have engaged in retaliatory and discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981.

162. At all times relevant herein, Plaintiff was perceived to be disabled, within the ADAAA in that Defendants perceived Plaintiff to have a physical or mental impairment requiring an evaluation and consultations as required; (2) Plaintiff was regarded as having such impairments.

163. Plaintiff engaged in protected activity under the ADA and ADAAA by complaining about the ongoing discrimination and harassment on the basis of disability at Duke.

164. Upon information and belief, following Plaintiff's protected activity, Defendants' allegations were published by Defendant McDonnell to third parties in retaliation against Plaintiff's protected activity.

165. The adverse employment actions taken by Defendants were because of, and in response to, Plaintiff's complaints of harassment and discrimination on the basis of disability.

166. Defendants' actions have caused Plaintiff to suffer embarrassment and humiliation, mental and emotional distress, entitling him to compensatory damages pursuant to 42 U.S.C. § 1981.

167. Defendants' discriminatory conduct, in violation of ADA and ADAAA, has caused Plaintiff to suffer loss of pay, benefits, opportunities, and prestige.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, Plaintiff prays the Court that it:

1. Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of Plaintiff's rights;
2. Permanently enjoin the Defendants from engaging in said unlawful practices, policies, customs, and usages set forth herein and from continuing any and all other practices shown to be in violation of applicable law;
3. Award Plaintiff compensatory damages for pecuniary losses, emotional pain, and mental anguish, embarrassment and humiliation for each of the above stated causes of actions in an amount more than $25,000.00, together with attorney's fees pursuant to federal law, including the EEOC laws, 42 U.S.C. § 1988 and North Carolina law, plus the costs and disbursements of this action;
4. Award Plaintiff punitive damages and affirmative relief necessary to eradicate the effects of each claim regarding the intentional unlawful retaliation, unlawful practices, unlawful conduct, unlawful employment opportunity denials and unlawful discrimination and retaliation;
5. Award Plaintiff all appropriate statutory damages;
6. Grant Plaintiff a jury trial on all issues of fact; and
7. Grant such other relief as may be just and proper.

This is the 11th day of December 2020.

    /s/Janet J. Lennon

Janet J. Lennon, Attorney for Plaintiff
N.C. Bar No.: 30458
Tiffany Russell, Attorney for Plaintiff
N.C. Bar No.: 37756
123 West Main St., Suite 310
Durham, NC 27701
Phone (919) 680-8548
Fax (919) 680-8549